UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMMANY BOUTTIRATH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:21-cv-01573-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(Docs. 22, 24) |

Plaintiff Sommany Bouttirath ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 22, 24). Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.

**I.　　BACKGROUND**

**A. Administrative Proceedings and ALJ's Decision**

On January 30, 2018, Plaintiff filed a Title XVI application for supplemental security income. (AR 19, 164-173). Plaintiff's application was denied and, after reconsideration, was denied again. (AR 55-65, 67-77, 81-85). Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 95). On February 20, 2020, the assigned ALJ, Rebecca

LaRiccia, held a hearing; Plaintiff and his counsel attended, as did Laotian interpreter Yang Yang and vocational expert Daniel Best. (AR 35-54). The ALJ issued her decision on March 25, 2020, finding Plaintiff not disabled. (AR 16-34). On August 26, 2020, the Appeals Council found no basis for changing the ALJ's decision. (AR 5-10). Plaintiff was granted an extension of time within which to file a civil action, which was timely filed. (AR 1-4).

In her decision, the ALJ used the five-step sequential evaluation process promulgated by the Social Security Administration for determining whether an individual is disabled. (AR 20) (citing 20 C.F.R. § 416.920a). The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2018, the application date. (AR 21). The ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, and obesity. She noted that Plaintiff also had the following non-severe impairments: right shoulder pain, low back pain, cataracts, hypertension, diabetes, GERD, mixed urinary incontinence, asthma, depression, and PTSD. (AR 21-25). After identifying these impairments, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 25).

The ALJ reached this determination by considering the four broad functional areas of mental functioning listed in the "paragraph B" criteria.[1] The first functional area is understanding, remembering, or applying information. The second functional area is interacting with others. The third functional area is concentrating, persisting, or maintaining pace. Lastly,

---

[1] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.* An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." *Id.* And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited." *Id.*; *see Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at n.7 (E.D. Cal. Feb. 9, 2023).

the fourth functional area is adapting or managing oneself.  The ALJ found Plaintiff had a mild limitation in all four functional areas.  (AR 22, 24).  In finding as such, the ALJ cited to the medical record, noting that the depression appeared to be well managed with medication and, though there are periodic reports, Plaintiff frequently denies symptoms.  The ALJ also discussed the evaluations of psychologists James Murphy and Lance Zimmerman, finding Dr. Murphy's opinions to be persuasive, aside from his limitation to simple and repetitive tasks, and finding Dr. Zimmerman's opinions to be inconsistent with the record and, therefore, unpersuasive.  (AR 22-25).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c).  (AR 25).  After summarizing the medical evidence, the ALJ found that the Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms but the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence in the record.  (AR 26-27).  The ALJ noted that the evidence of record provided little support for Plaintiff's alleged physical symptoms, and that reports of physical pain or difficulty functioning were few and sporadic.  The ALJ examined the medical records, noting that in multiple visits Plaintiff had denied musculoskeletal and neurological concerns and no such issues were found upon examination.  The ALJ discussed inconsistencies in the record, such as Plaintiff's instances of using a cane prior to July 18, 2018.  The ALJ stated that, after reporting a fall on June 3, 2018, to her physician as an appointment on July 18, 2018, she did not seek medical attention after the fall.  (AR 27).

The ALJ found that the record showed that, contrary to Plaintiff's reports, her neck and extremities moved well, with age-appropriate muscle tone, normal reflexes, and grossly intact cranial nerves.  The ALJ noted that she had been referred to physical therapy for chronic right shoulder pain, chronic neck pain, and to evaluate the need for a walker, and she was already reportedly in physical therapy.  However, the ALJ found that the record does not evidence physical therapy for low back pain, or any evaluation of shoulder and neck pain, with imaging of her right shoulder showing no acute fracture, and only mild narrowing of the shoulder joint and mild periarticular spurring of the AC joint, as well as cervical and lumbar imaging returning only mild

and moderate results. (AR 28).

The ALJ determined that the record showed no treatment for Plaintiff between September 2018 and January 2020. The ALJ found that, on January 13, 2020, Plaintiff reestablished care after moving out of state and then returning, reporting chronic neck and shoulder pain at "2/10" severity, managed effectively with Advil. The ALJ noted that she reported no falls in the last six months and that this conflicted with Plaintiff's February 20, 2020, hearing testimony, during which she attested that about two months prior, her children took her to the doctor after she got dizzy and fell, while walking with a cane. The ALJ found that the record was unclear on her use of a cane at this visit. In one section, the medical record reflects that she had no durable medical equipment, but that she ambulated independently with an assistive device; however, under the section regarding her physical examination, she was noted to ambulate independently without an assistive device. The ALJ noted that Plaintiff denied joint pain, weakness, or limitation of motion and, on examination, there were no abnormal musculoskeletal or neurological findings, and sensory and motor strength were intact. (AR 28).

The ALJ found the opinions of the state agency consultants to be unpersuasive. She stated that, as they had found no severe physical or mental impairments, they were inconsistent with the record. The ALJ determined that the evidence (specifically citing cervical imaging) established a severe physical impairment. (AR 28-29). The ALJ determined that Plaintiff was capable of performing past relevant work as an electronics assembler, as actually and generally performed. The ALJ, thus, found that Plaintiff had not been under a disability since January 30, 2018. (AR 29).

**B. Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.   STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a

claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. (*Id.*).

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §

416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III.   ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying her application. (Doc. 1). Plaintiff raises the following issues:

1. The ALJ erred by assessing Plaintiff's mental impairments as non-severe at step two and by failing to accommodate the related non-exertional limitations at step four and five of the sequential evaluation process; and

2. The ALJ's physical RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly develop the record and, instead, played doctor by interpreting objective evidence without the guidance of medical professionals. (Doc. 22 at 3).

**A. Whether the ALJ Erred by Assessing Plaintiff's Mental Impairments as Non-Severe and by Failing to Accommodate the Related Non-Exertional Limitations**

Plaintiff asserts that the ALJ erred by failing to engage in a proper analysis under step two of the relevant five-step analysis. *Id.* at 10-13; *see* 20 C.F.R. § 416.920(a)(4)(i)-(v). Plaintiff states that "there was sufficient evidence regarding Plaintiff's mental impairments to clear the *de minimis* hurdle" of the step-two inquiry. (Doc. 22 at 10). Plaintiff cites an evaluation from psychologist Lance Y. Zimmerman (AR 393-396), arguing that the ALJ failed to properly consider Dr. Zimmerman's findings in rejecting Plaintiff's depression and PTSD as severe impairments and

"mischaracterized the record in finding that these impairments 'do not cause more than minimal limitation in the claimant's abilities.'" (Doc. 22 at 11; citing AR 22). Plaintiff argues that the ALJ's determination of depression and PTSD as non-severe is further contradicted by the consultative exam of psychologist Dr. Murphy, as well as the ALJ's own "paragraph B" findings of mild limitations in each of the functional areas. *Id.* at 11-12.

Plaintiff has the burden of producing evidence to demonstrate that she was disabled within the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). At step two, an ALJ must consider if a claimant has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (quotation and citations omitted). Step two, then, is "a de minimis screening device [used] to dispose of groundless claims." *Id*. An ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quotations and citation omitted) (noting that the substantial evidence standard applies at step two).

The ALJ concluded that Plaintiff's "medically determinable mental impairments of depression and PTSD, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (AR 22). In her decision, the ALJ evaluated the medical history of record, as well as the findings of Drs. Murphy and Zimmerman.

### i.  Medical Evidence

The ALJ considered the "Paragraph B" criteria in her analysis, finding a mild limitation in each of the four functional areas, with the treatment record contradicting the severity of Plaintiff's symptoms, as provided in her function report and during the hearing. (AR 22). The ALJ further noted that the record showed no treatment between September 2018 and January 2020. (AR 23). A review of the record supports the ALJ's findings.

On June 23, 2017, physician assistant Juan Patlan records a medication refill, noting that Plaintiff takes sertraline once daily and mirtazapine once nightly, stating that her depression is "stable on medications for past several years" and she is "[n]egative for suicidal ideas." In his summary, Juan Patlan states Plaintiff "has been stable on all medications for past years" with no history of hospitalizations. (AR 379-380). On January 24, 2018, physician assistant Bounmy Pinyasone records an initial appointment with Plaintiff, complaining of back pain. (AR 294). Plaintiff is recorded as scoring 19 in the PHQ-9 depression screening, "indicating a moderate-major depressive disorder." (AR 298). She is recorded as taking Abilify. The medical plan of care does not mention depression. (AR 299). On March 7, 2018, physician Mandeep Bhinder records an appointment with Plaintiff for an initial assessment; he notes Plaintiff has memory difficulties, tremors, and other symptoms. (AR 335). He notes the same on April 18, 2018, as well as Plaintiff taking Abilify. (AR 338).

On May 22, 2018, Plaintiff had an appointment with physician Amy Alagh, who records that Plaintiff has a history of depression that is "controlled on current antidepressants." (AR 360, 377). On July 18, 2018, Plaintiff had an appointment with physician Joyce Goetsch for a follow-up regarding shoulder pain after a fall. (AR 404). Dr. Goetsch notes that Plaintiff denies tingling, numbness, incoordination, memory difficulties, and tremors (AR 405) and does not include depression or PTSD in her assessment (AR 406). On August 20, 2018, Plaintiff had an appointment with Dr. Bhinder for a six-month assessment; Dr. Bhinder notes that Plaintiff "[d]enies depression." He notes "[d]epression, major, in partial remission" and that Plaintiff is continuing to take Abilify. (AR 408). For a September 17, 2018, appointment, Dr. Bhinder again notes "[d]epression, major, in partial remission" and Plaintiff continuing to take Abilify. (AR 412). For a January 13, 2020, appointment, nurse practitioner Linda Yang also notes "[d]epression, major, in partial remission." (AR 428). Yang notes that Plaintiff is "sad and depress [sic] sometimes, no suicidal thoughts." (AR 431).

Though the record shows Plaintiff has been diagnosed with depression, the evidence of treatment is not lengthy. Additionally, there are significant gaps in treatment. And further, the record shows medication effectively managing depression and its symptoms. *See Christen S. v.*

*Kijakazi*, No. 4:22-CV-5171-EFS, 2023 WL 6299836, at *2 (E.D. Wash. Sept. 27, 2023) ("The medical record reflects that Plaintiff's anxiety and depression … responded well to medication … Plaintiff rarely reported any anxiety symptoms, let alone mental dysfunction, to her treating providers … Therefore, the ALJ reasonably relied on the routinely normal mental-health status notations in the record, along with the lack of reported severe mental-health symptoms and medication side-effects.").

### ii.   Dr. Murphy's Evaluation

Plaintiff was evaluated by psychologist Dr. Murphy on May 25, 2018. (AR 317). The ALJ found Dr. Murphy's opinions persuasive, except regarding limitations to simple repetitive tasks. The ALJ stated that the evaluation evidenced only mild symptoms and, apart from Plaintiff's subjective report of depressed mood and affect, was "largely benign." The ALJ also noted that, in the treatment records discussed above in subsection (i), Plaintiff denied symptoms of mental impairments, and the records themselves do not support any mental limitations. (AR 23-24).

Regarding subjective reports, a "physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotations and citation omitted). However, the Ninth Circuit has explained that this rule does not apply in the same manner to opinions regarding mental illness. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (finding that the consultative examiner's partial reliance on the plaintiff's self-reported symptoms was not a reason to reject his opinion). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields.  Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Id.* (citation omitted). Nonetheless, "[w]hen there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To properly reject a conflicting opinion, the ALJ must provide

1    specific and legitimate reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d
2    664, 675 (9th Cir. 2017).

3    "The most important factors" that must be considered when evaluating the persuasiveness
4    of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a).
5    Supportability means the extent to which a medical source supports the medical opinion by
6    explaining the "relevant … objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency
7    means the extent to which a medical opinion is "consistent … with the evidence from other
8    medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

9    During his evaluation, Dr. Murphy records Plaintiff stating that severity of symptoms of her
10   depression were mild. (AR 317). As noted by the ALJ (AR 22), Plaintiff appears to contradict
11   prior medical records by stating that she does not take psychotropic medication and has never
12   received treatment from a psychiatrist. Plaintiff is recorded as representing that she was not on any
13   psychotropic medication at the time, has never attempted suicide, and has "no thoughts of plans to
14   attempt suicide now or in the future." She is recorded as stating that she becomes angry daily, and
15   will yell, swear, and throw things; she denied violent behavior towards others and denied history
16   of mental illness in her family. (AR 318).

17   Plaintiff is recorded expressing that she feels depressed and tired, that her mental health
18   symptoms are okay but she feels sad frequently and occasionally teary-eyed. *Id.* She reported
19   ongoing sporadic treatment for symptoms and attending "a group." (AR 319). When assessing
20   Plaintiff's functional capacity, Dr. Murphy found that she did not have "restrictions concerning
21   daily activities" and found no functional limitations. (AR 320-321). In the diagnosis section of the
22   report, Dr. Murphy listed major depressive disorder, but beside it wrote "recurrent moderate" and
23   "the observed and described symptoms for this disorder did not meet the minimum criteria listed
24   in the DSM-IV-TR."[2] He also listed generalized anxiety disorder, but beside it wrote "the observed
25   and described symptoms for this disorder did not meet the minimum criteria listed in the DSM-IV-
26   TR." (AR 321). Dr. Murphy concluded by reiterating that Plaintiff's diagnosis did not meet

---

[2] Presumably, Dr. Murphy refers to the Diagnostic and Statistical Manual of Mental Disorders, fourth edition. *See* Harriet S. Meyer, *DSM-IV*, 272 JAMA 828 (1994).

1  minimum criteria and found Plaintiff capable of performing simple repetitive tasks on a regular
2  basis. (AR 322).
3        The ALJ accurately evaluated Dr. Murphy's opinions. Contrary to Plaintiff's assertions,
4  Dr. Murphy's opinion evidence on the whole does not contradict the ALJ's assessments and
5  supports the ALJ's findings as to the medical evidence, as discussed above in subsection (i).
6  Additionally, the ALJ's reasoning for discounting Dr. Murphy's limitation to simple and repetitive
7  tasks is supported by substantial evidence. Dr. Murphy's own findings contradict that very
8  limitation, as he found Plaintiff had no functional limitations and her diagnoses did not meet
9  minimum criteria. Additionally, the medical evidence of record showed largely mild symptoms.
10 As such, having correctly considered the supportability and consistency factors, the ALJ's decision
11 to discount Dr. Murphy's limitation was supported by substantial evidence.

### iii.    *Dr. Zimmerman's Evaluation*

13     Plaintiff was evaluated by psychologist Dr. Zimmerman on three separate days, namely
14 August 8 and 24, 2018, and September 11, 2018. (AR 393). The ALJ discounted Dr.
15 Zimmerman's evaluation, noting that the results were inconsistent with the record, including
16 contemporaneous reports to treatment providers.
17      Dr. Zimmer conducted a one-time examination of Plaintiff on November 25, 2018. (AR
18 383). She was noted as sad, depressed, very tired, and with blunt affect. She is described as
19 hearing screaming voices only she can hear late at night, along with smells and sensations. She is
20 reported as scoring 70 on the PCL-C scale, registering significant levels of PTSD. She is reported
21 as stating that numerous members of her family died during armed conflict when she was
22 younger, with her being injured, as well as the presence of widespread disease. She stated that
23 she had stressful dreams of these experiences, resulting in upset feelings and physical reactions.
24 (AR 394-395). She is noted as scoring 43 on the Beck Depression Inventory, registering severe
25 depression, and 46 on the Beck Anxiety Inventory, registering both moderate and severe
26 symptoms. She reported an attempted suicide approximately ten years earlier where she stopped
27 in the middle of a Texas freeway and walked in traffic, before being led to safety. She denied
28 more recent suicide attempts. (AR 395). She is noted as having PTSD, with major depression

1   secondary.  (AR 396).

2   After providing a summary of the evaluation, the ALJ properly discounted it for multiple
3   reasons.  (AR 24).  First, the ALJ noted that Dr. Zimmerman is not a regular treatment provider
4   for Plaintiff and that this was a one-time examination (though over three separate days).  This is a
5   valid basis for discounting a medical opinion pursuant to 20 C.F.R. § 404.1520c(c)(3).  *See*
6   *Fernandez v. Comm'r of Soc. Sec. Admin.*, No. CV-23-01034-PHX-DWL, 2024 WL 4198385, at
7   *6 (D. Ariz. Sept. 16, 2024) (finding ALJ properly discounted persuasiveness of physician's
8   opinion as to mental impairments where physician only met with plaintiff four times in three
9   years) (citing, *inter alia*, *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022)).  *See also Woods*,
10  32 F.4th at 792 ("an ALJ can still consider the length and purpose of the treatment relationship
11  [and] the frequency of examinations").

12  Second, Dr. Zimmerman's opinions are not supported in the record, which nowhere else
13  evidences such severity of symptoms.  Third, Dr. Zimmerman's opinions were based in large
14  extent upon Plaintiff's own accounts and, importantly, Plaintiff contradicts those same accounts
15  near contemporaneously.  As noted above in subsection (ii), on August 20, 2018, Plaintiff had an
16  appointment with Dr. Bhinder for a six-month assessment; Dr. Bhinder notes that Plaintiff
17  "[d]enies depression" and "[d]epression, major, in partial remission" and that Plaintiff is
18  continuing to take Abilify (AR 408); on September 17, 2018, Dr. Bhinder again notes
19  "[d]epression, major, in partial remission" and Plaintiff continuing to take Abilify (AR 412).  The
20  ALJ notes that Plaintiff further contradicts her prior evaluation with Dr. Murphy, providing a
21  different number of siblings and differing account of her childhood history.

22  And fourth, Plaintiff sought little to no treatment regarding the findings and symptoms,
23  neither prior to nor after the examination.

24  The Court, considering the record as a whole, finds that the ALJ relied on substantial
25  evidence sufficient to support her reasonable conclusions and, therefore, did not fail to provide a
26  proper basis for the non-severe disability determinations regarding Plaintiff's psychological
27  impairments.  Though it is true that occasional symptom-free periods are not necessarily

28

inconsistent with disability,[3] particularly as to depression, the record here evidences a general baseline where Plaintiff's symptoms are controlled, with only relatively rare reports of relatively mild symptoms. The ALJ properly determined Dr. Murphy's evaluation as supporting no mental limitations and properly discounted Dr. Zimmerman's evaluation as inconsistent and unsupported by the record. *See De Guzman v. Astrue*, 343 Fed. Appx. 201, 207 (9th Cir. 2009) (discrediting psychologist's mental status exam because the conclusions were "based on a subjective report of symptoms and contrast sharply with the other psychological evidence in the record," and as the exam "was premised on [plaintiff's] own subjective complaints, which the ALJ had already properly discounted based on inconsistencies, the ALJ proffered specific and legitimate reasons for discounting the diagnosis").

Accordingly, the ALJ did not err in excluding related non-exertional limitations at step four and five. *See Sherman v. Colvin*, 582 Fed. Appx. 745, 749 (9th Cir. 2014) ("The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe … In this case, however, Sherman has not shown that his alleged depression resulted in any functional limitations that the ALJ failed to consider.") (quotations and citations omitted); *see also Kimberley A. v. Kijakazi*, No. 2:20-CV-01802-SB, 2022 WL 19203, at *6 (D. Or. Jan. 3, 2022) ("As relevant here, a finding that an individual has 'moderate' limitations in the paragraph B criteria domains does not require the ALJ to assess a specific degree of functional limitation in the RFC.") (quotations and citations omitted).

Insofar as Plaintiff puts forth another rational interpretation of the record, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**B. Whether the ALJ's Physical RFC Determination Was Not Supported by Substantial Evidence and Was the Result of the ALJ's Failure to Properly Develop the Record**

Plaintiff asserts that the ALJ erred by failing to support the RFC with substantial evidence

---

[3] *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *superseded on other grounds by* 20 C.F.R. parts 404 & 416.

and failed to properly develop the record. Specifically, Plaintiff argues that the ALJ found the only opinions of record pertaining to Plaintiff's physical impairments were unpersuasive and improperly cited "raw evidence," namely cervical imaging, to support her RFC findings. (Doc. 22 at 13-14). Plaintiff argues that the ALJ should have developed the record by ordering a physical consultative examination in light of her rejecting the only physical opinions of record. *Id.* at 14.

### i. *Cervical Imaging Evidence*

The ALJ discussed cervical imaging evidence when evaluating the limitations in the RFC. The ALJ states as follows:

> The evidence of record does not contain any evidence of physical therapy for low back pain, or of any evaluation of shoulder and neck pain. Imaging of the claimant's right shoulder showed no acute fracture, and only mild narrowing of the shoulder joint and mild periarticular spurring of the AC joint. Cervical imaging showed moderate lower cervical disc space narrowing, with mild uncinate process hypertrophy. Lumbar imaging shows normal disc spaces, with mild spurring of the lumbosacral spine diffusely.

(AR 28) (citations omitted).

Contrary to Plaintiff's assertions, the ALJ did not interpret the cervical imaging evidence herself but, rather, almost directly quoted the language of the interpreting radiologist, Harold Trief. (AR 420-421). The ALJ refers to the evidence once more: "Cervical imaging received at the hearing level shows that the claimant has moderate degeneration, and establishes a severe physical impairment." (AR 29). The ALJ's use of such language as "moderate degeneration" merely paraphrases the language she quoted earlier from Dr. Trief. It does not constitute an independent medical determination. As such, the ALJ did not "play doctor" but rather incorporated the opinion of a physician, who had interpreted the evidence himself.

### ii. *RFC and Consultative Examination*

It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir.1998); 20 C.F.R. §§ 404.1512(d)-(f). One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.*, "a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense." 20

1    C.F.R. §§ 404.1519, 416.919.

2    The ALJ "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). Though not required in all cases, certain scenarios "normally require a consultative examination, including those in which additional evidence needed is not contained in the records of [the claimant's] medical sources, and those involving an ambiguity or insufficiency in the evidence [that] must be resolved." *Id.* (quotations and citations omitted).

Plaintiff cites to the case of *Cortez v. Colvin*[4] for the proposition that an ALJ needs some from of guidance from a healthcare professional as to the impact of impairments on Plaintiff's ability to work. (Doc. 22 at 14). However, *Cortez* is distinguishable from the instant action. There, the ALJ did, in fact, interpret raw medical evidence to reach his conclusions as to mental impairments, particularly as to improvement in the plaintiff's symptoms when taking his medication. The *Cortez* court noted an absence in the record as to the degree to which plaintiff's mental impairments affected him and what impact his medications had on his ability to work.

The court stated: "Specifically, the ALJ did not seek to have Plaintiff undergo further examination in light of the positive medication effects, nor did he obtain further review of Plaintiff's treating records by a [s]tate agency physician after Plaintiff began taking medication … when the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. Here, the ALJ did not do so. Instead, he improperly interpreted the treating records that were available and made a RFC determination based on that raw medical data." *Cortez*, 2016 WL 3541450, at *6.

Plaintiff generally is correct that an ALJ should not "substitute[e] her own lay interpretation" of medical records in place of the interpretation of a medical expert. (Doc. 22 at 15); *see, e.g.*, *Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1009-10 (E.D. Cal. 2017) ("[a]n ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (collecting cases). However, there is nothing in the ALJ's decision indicating that she interpreted raw medical data or relied on her own medical judgment in constructing the RFC. Nor is there anything suggesting to the Court that the record was ambiguous or inadequate as would be

---

[4] No. 1:15-CV-00102-EPG, 2016 WL 3541450 (E.D. Cal. June 24, 2016).

1  necessary to trigger the ALJ's duty to further develop the record. *See Mayes v. Massanari*, 276
2  F.3d 453, 460 (9th Cir. 2001); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)
3  (ALJ's duty to develop record triggered only if evidence is ambiguous or where "the ALJ's own
4  finding that the record is inadequate to allow for proper evaluation of the evidence"). Rather, the
5  ALJ relied on the opinions of the state agency consultants and imposed limitations greater than
6  those opined by the experts based on the record evidence. This reflects an important distinction
7  from the facts herein as compared to *Cortez*, where the ALJ first interpreted the raw medical data
8  and then made an RFC determination based on his interpretation. Here, the ALJ made an RFC
9  determination not based on her own interpretation of medical data but, rather, the interpretation of
10 Dr. Trief and other healthcare professionals in the record. *See Torres v. Comm'r of Soc. Sec.*, No.
11 2:19-CV-1246-DMC, 2020 WL 5820610, at *8 (E.D. Cal. Sept. 30, 2020) ("Simply because
12 various opinions present a conflict does not mean any particular opinion is ambiguous such as
13 would trigger the … duty to develop the record").

14     Additionally, because the added limitations resulted in a narrower RFC than that
15 considered by the experts, any resulting error in imposing the additional limitations was harmless.
16 That is because the additional limitations would benefit (not prejudice) Plaintiff. *See Stout v.
17 Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (collecting cases and finding
18 that a court may affirm the determinations of an ALJ "under the rubric of harmless error where
19 the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability
20 conclusion," including where the error was in the claimant's favor); *see also Johnson*, 60 F.3d at
21 1436 n.9 (finding "overinclusion of debilitating factors" in hypothetical to vocational expert that
22 were not included in the ultimate RFC was "harmless simply because if a person can do a job that
23 requires increased concentration, the claimant is also capable of performing work that requires
24 less concentration").

25                    *    *    *    *    *

26     In sum, substantial evidence supports the ALJ's findings as to the severity of Plaintiff's
27 mental and physical impairments, her treatment of the opinions of Drs. Murphy and Zimmerman
28 and the state agency consultants, and her refraining from ordering a consultative examination.

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 22) is DENIED;

2. Defendant's cross-motion for summary judgment (Doc. 24) is GRANTED;

3. The ALJ's decision is affirmed; and

4. The Clerk of the Court shall enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

Dated:   **April 25, 2025**                                    _____
                                                              UNITED STATES MAGISTRATE JUDGE

18